## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 13 CR 00861-1 |
| | ) | |
| DARNELL McMILLER, | ) | Judge Rebecca R. Pallmeyer |
| Defendant. | ) | |

### DEFENDANT DARNELL McMILLER'S SENTENCING MEMORANDUM

Now comes Defendant **DARNELL McMILLER**, by and through his attorney

**PATRICK E. BOYLE**, and respectfully requests, pursuant to 18 U.S.C. Section 3553(a), Rita v.

United States, 127 S.Ct. 2456 (2007), and United States v. Booker, 543 U.S. 220 (2005), that this

Honorable Court impose a sentence of sixty (60) months of imprisonment, which is slightly

below the current applicable advisory guideline range, because such a sentence is sufficient, but

not greater than necessary, to comply with the purposes of sentencing in 18 U.S.C. Section

3553(a).  In support of this request, Mr. McMiller submits and files with this Honorable Court

his Sentencing Memorandum as follows:

**I.      Who is Darnell McMiller?**

Darnell McMiller is a 28 year-old-man who was born and raised on the south side of

Chicago.  As is noted in the PSR, Darnell "was born premature, his lungs were not fully

developed, and he was 'sickly' as a child."  (PSR at 50)  In a support letter provided to this

Court, Darnell's mother, Evelyn McMiller, states that "of all my children I held Darnell the

closest to me due to his premature birth and chronic ailments and disabilities."  (Evelyn

McMiller letter) These health difficulties contributed to Darnell having learning disabilities and

for being placed in "special education classes throughout grammar school and high school, and

[he] has difficulties reading and spelling." (PSR at 65)

However, along with these challenges, Darnell was luckily blessed to have been born into a loving and supportive family. This fact is revealed in the many thoughtful and caring support letters submitted to this Court on Darnell's behalf. Unfortunately, his father passed away in 1995 due to kidney disease when Darnell was only 10 years old. (This is a correction of the PSR which mistakenly states that Darnell's father passed away in 2005, PSR at para 49) Darnell's mother did her best but the death of his father at this formative age greatly impacted Darnell and made things more difficult for him. The aforementioned learning disability made school difficult for Darnell and he was often the subject of teasing as his sister reveals "he sometimes struggled in school with kids looking at him differently because of his learning disability and that he was in a special education class." (Chantay McAllister letter) Although Darnell did attend Robeson High School and actually completed the 11th grade he unfortunately did not graduate. Darnell wants to obtain a General Equivalency Diploma and he will make that his primary objective while serving his sentence in this case.

Darnell acknowledges that he has a very limited employment history for a 28 year-old-man. Part of the blame lies in the economic reality of where Darnell was raised and lives but he knows he should have and could do better. As is noted in the PSR, Darnell is a self-trained bricklayer and he has worked for his sister's boyfriend Michael Williams in Mr. Williams' construction company. (PSR at para 68) Darnell is hopeful that he can again obtain employment with Mr. Williams or in a similar job after he has served his sentence. This is crucial because Darnell has children to support. While children are a blessing, they are also a great responsibility. Luckily, Darnell has good relationships with the mothers of his children (which is

reflected in several support letters offered to the court) and he is involved in the raising and support of his children. However, Darnell knows that his support is obviously completely insufficient if he is incarcerated or unemployed after his release. At this stage in his life, Darnell acknowledges that the support and protection of his children has to be his primary purpose in life. Recognizing this, Darnell promises to take full advantage of any educational and vocational services provided to him while in prison and also while on supervised release. As is noted in the PSR, for many years, Darnell has been a daily, excessive user of marijuana. This use has clouded his judgment and robbed him of proper motivation. Darnell asks that as part of his sentence that this Court recommend that he receive placement in a residential drug rehabilitation program. When Darnell serves his sentence and is released, he will be in a much better position – namely sober and with educational and vocational accomplishments – to obtain employment and help support his children. .

## II.     Legal Standard: Sentencing Below Guideline Range Post-__Booker__

In United States v. Booker, 125 S. Ct. 738 (2005), the Supreme Court made the Sentencing Guidelines effectively advisory. As a consequence, the federal sentencing statute still "requires a sentencing court to consider Guidelines ranges, . . . , but it permits the court to tailor the sentence in light of other statutory concerns as well . . ." Booker, 125 S. Ct. At 756-57. The Court's ultimate sentence needs to be "reasonable and carefully supported by reasons tied to the Section 3553(a) factors." Ranum, 353 F.Supp.2d at 987-89. The Section 3553(a) factors include:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed -
    (a) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
    (b) to afford adequate deterrence to criminal conduct;
    (c) to protect the public from further crimes of the defendant; and
    (d) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the advisory guideline range;

(5) any pertinent policy statements issued by the Sentencing Commission;

(6) the need to avoid unwarranted sentence disparities, and

(7) the need to provide restitution to any victims of the offense. 18 U.S.C. Section 3553(a).

Most importantly, Section 3553(a) directs the court, after considering these factors, to impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in" sub-section (a)(2). *Id*. This is the so-called "parsimony provision," which requires district courts to impose the minimum term required to satisfy the purposes of sentencing – just punishment, deterrence, protection of the public and rehabilitation of the defendant. *See, e.g.,* United States v. Cull, 446 F.Supp.2d 961, 963 (E.D. Wis. 2006); *see also* United States v. Ferguson, 456 F.3d 660, 667 (6th Cir. 2006) (stating that the parsimony provision serves as "the guidepost for sentencing decisions post-Booker).

Here, the offense that Darnell committed and pled guilty to, the sale of crack cocaine, carries a mandatory minimum sentence of 5 years (or 60 months) imprisonment. As calculated by the PSR, this offense conduct combined with Darnell's criminal history of 2 points (category II) results in an advisory guideline range of 63 to 78 months (PSR at 75). Consequently,

Darnell's sentencing request of 60 months is only slightly below the low-end of the advisory guideline range here. Further, it is significant, as this Court is now aware, that the Department of Justice has recently recommended a proposed amendment to the Drug Quantity Table – namely, a two-level reduction of the offense level for a drug case like we have here – which would result in an offense level of 23 (category II) or an adjusted guideline range of 46-57 months which is actually above the defendant's requested sentence of 60 months.

### III.    Darnell McMiller's 3553(a) Factors and the Circumstances of the Offense

In this case, Darnell McMiller was charged with making three, controlled, drug sales with an individual who was cooperating with law enforcement. There was no evidence that Darnell was armed during these transactions and he was obviously not charged with any weapon or an "in futherance" enhancement to these drug offenses. Significantly, these drug transactions took place back in early 2011 (January and February as noted in the PSR at 10). Consequently, the defendant is being sentenced for conduct he committed over three years ago. The government has stated that they are seeking an above-guideline range sentence due to the violent nature of the defendant. This position is also reflected in the information provided to probation and reported in the PSR in paragraph 11. This information, to which the defendant respectfully objects to being included in the "offense conduct" portion of the PSR, is albeit revealing. Apparently, Darnell has been closely watched by the authorities since 2008 and was not arrested until 2013. The arresting agent notes that due to Darnell's nickname (Murder) and "his reputation for violence" a SWAT team was utilized to arrest the defendant in this case. What is most significant, is that his arrest was without incident, Darnell was not armed and did not resist or threaten the arresting agents in any way. He has conducted himself in an entirely proper way

throughout the proceedings in this case, promptly accepted responsibility and pled guilty and cooperated with probation. Darnell merely requests that your Honor take into consideration that he is being sentenced for crime that he committed in 2011 and the events surrounding his arrest and his conduct awaiting his sentencing supports that he is now a different person and deserving of his requested sentence.

The Darnell McMiller who now stands before this Court in 2014 to be sentenced knows that he has wasted many years of his life. When he serves his sentence he will be in his thirties. He now knows that what is important is making the most of life, being productive and law abiding, and spending quality time with loved ones. After his release, Darnell will be a different person and be in a much better position than when he committed his crime. He will have achieved and maintained long-term sobriety which will inevitably lead to clearer and more rational thought. He will have obtained his G.E.D. degree and any other vocational training offered. He will be ready to find honest work and help others by being a community volunteer and be a voice calling for an end to the senseless violence in his community. If what the government says about the Darnell of 2011 is true, his voice will carry great weight and credibility with the young people in the community who are faced with and sometimes perpetrate the cruel and mindless violence that we are now plagued with. As is noted in the PSR, Darnell himself was a victim of a shooting in 2010 which almost killed him and left him in a coma for one month. His dream is now simple and most importantly, realistic – to serve his sentence and be reunited with his family and be a positive force in their lives and his community's and to never again break the law.

6

**IV. Conclusion and Sentencing Recommendation**

Mr. Darnell McMiller respectfully requests that this Court accept his arguments concerning his acceptance of responsibility, anticipated two-level reduction in the Drug Quantity Table, age, health conditions, support of loved ones, and all of the other factors justifying a slightly below guideline sentence. Consequently, Mr. McMiller respectfully requests that this Court sentence him to a term of incarceration of 60 months. Such a sentence would fully comply with the dictates of section 3553(a) while being fair, just and sufficient. Mr. McMiller further requests that this Court recommend that he be placed in the BOP's residential drug treatment program as part of his sentence, that job training be ordered and that this Court recommend that he serve his sentence at an appropriate facility near Chicago so that he can be near his family and remain a part of their lives.

Respectfully submitted,

**DARNELL McMILLER,**

By:    s/ Patrick E. Boyle
            By his attorney Patrick E. Boyle

Law Offices of Patrick E. Boyle
**PATRICK E. BOYLE**
155 N. Michigan Ave., Suite 562
Chicago, IL 60601
(312) 565-2888

## <u>CERTIFICATE OF SERVICE</u>

      The undersigned Attorney certifies that the following Sentencing Memorandum was served on **Wednesday, April 30, 2014**, in accordance with FED. R. CRIM. P. 49, FED. R. CIV. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

                                 By:    <u>s/ Patrick E. Boyle</u>
                                              PATRICK E. BOYLE

Law Offices of Patrick E. Boyle
**PATRICK E. BOYLE**
155 N. Michigan Ave., Suite 562
Chicago, IL 60601
(312) 565-2888